STATE OF CONNECTICUT *v.* JEFFREY PIERCE
(SC 16826)

Sullivan, C. J., and Borden, Katz, Vertefeuille and Zarella, Js.

Argued April 15—officially released June 1, 2004

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, was *Scott J. Murphy*, state's attorney, for the appellant (state).

*Francis L. O'Reilly*, special public defender, with whom was *Jane Shaw*, for the appellee (defendant).

*Opinion*

KATZ, J. The state appeals, upon our grant of certification, from the judgment of the Appellate Court reversing the trial court's order that the defendant, Jeffrey Pierce, register as a sex offender pursuant to General Statutes § 54-254 (a)[1] and remanding the matter for a hearing to determine whether the defendant had kidnapped the victim for a sexual purpose. See *State v. Pierce*, 69 Conn. App. 516, 538, 794 A.2d 1123 (2002). On appeal, the state claims that the Appellate Court improperly invoked the plain error doctrine in reaching its decision. We agree. Accordingly, we reverse the judgment of the Appellate Court and remand the case with direction to reinstate the registry requirement imposed by the trial court.

The Appellate Court's opinion sets forth the following pertinent facts, which the jury reasonably could have

[1] General Statutes § 54-254 (a) provides in relevant part: "Any person who has been convicted . . . in this state on or after October 1, 1998, of any felony that the court finds was committed for a sexual purpose, may be required by the court upon release into the community to register such person's name, identifying factors, criminal history record and residence address with the Commissioner of Public Safety, on such forms and in such locations as the commissioner shall direct, and to maintain such registration for ten years. . . ."

Although § 54-254 (a) has been amended twice since the time of the defendant's conviction, only one amendment is relevant to the statutory language referred to in the present case. See Public Acts 1999, No. 99-183, § 5 (changes included substitution of phrase "a sexual purpose" for "sexual purposes" and use of gender neutral language). For purposes of convenience, we refer herein to the current revision of the statute.

found. "On August 11, 1998, the victim drove her Plymouth Voyager minivan to the Shaw's Supermarket in Newington to purchase groceries. The victim was alone and spent approximately one-half hour inside the store. The victim then returned to her vehicle, loaded her groceries and got in the driver's seat. The defendant was hiding in the backseat of the vehicle and, upon the victim's entry into the vehicle, placed a knife to her side. The knife's blade was five to six inches in length and was beveled.

"The defendant told the victim to 'do as I say and you will not be hurt.' The defendant ordered the victim to drive to Glastonbury and gave her specific directions to follow. The defendant directed the victim to a park on a dirt road in East Hartford. The road was blocked by a gate and the victim stopped the vehicle. The defendant ordered the victim to accompany him into a wooded area. The victim refused and told the defendant that she did 'not feel like getting harmed or raped by [the defendant].' The defendant stated that he did not intend to harm the victim, but he did not want the victim to see which way he would be going in the wooded area to aid in his escape. The victim suggested that she would look away while the defendant fled into the wooded area. The defendant 'seemed satisfied with that,' and the victim did not turn around until she was certain that the defendant was gone.

"The victim then drove to the Newington police department and reported the incident. The victim described the man who perpetrated the crime as having shoulder length, dirty blond hair and wearing a baseball cap, blue jeans and a shirt. A detective prepared a composite sketch drawing based on the victim's description. Thereafter, flyers were printed based on the composite sketch drawing. The flyers were shown to members of the Newington police department, including Officer Jeannine M. Candels and her partner, Officer Timothy

A. Walsh, who both recognized the sketch as depicting the defendant. They then went to a motel in Newington, where they believed the defendant was currently living.

"The officers interviewed the defendant and he gave them a full statement in which he confessed. He signed the statement, and his version of the events matched that given by the victim. The defendant also gave the officers a baseball cap that he had been wearing during the event, and the officers took a picture of the defendant wearing the hat. The next day, the victim returned to the Newington police department and was shown a photographic lineup consisting of eight photographs, including [one of] the defendant. The victim recognized the defendant and pointed him out as the man that she had described three days earlier." *State* v. *Pierce*, 69 Conn. App. 516, 519–20, 794 A.2d 1123 (2002).

Following his conviction by a jury of kidnapping in the second degree in violation of General Statutes § 53a-94[2] and burglary in the first degree in violation of General Statutes § 53a-101 (a) (1),[3] the state invoked § 54-254 (a) and filed a motion asking the trial court to find that the defendant's crimes had been committed for a sexual purpose. The defendant did not object to the court's application of § 54-254 (a) or claim that it was a sentence enhancement statute or seek a separate evidentiary hearing. Rather, the defendant opposed the state's request, arguing only that the evidence presented during the trial was insufficient to support that requisite finding. He conceded nevertheless that the trial court

---

[2] General Statutes § 53a-94 (a) provides: "A person is guilty of kidnapping in the second degree when he abducts another person."

[3] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument . . . ."

General Statutes § 53a-100 includes a vehicle in its definition of "building" for purposes of Penal Code offenses.

"could only make such a finding based on the defendant's past history [of sex-related offenses] as . . . detailed in the presentence investigation [report]." The trial court remarked upon the evidence presented during the trial as well as other information that had come before it during the sentencing hearing and found that the defendant was a "sexual devia[nt]" with a long and alarming history of "antisocial behavior." The court then asked the state if it intended to present any further evidence in connection with its motion. The state responded that there were other witnesses available to testify as to the defendant's background, but the court noted that the presentence report was complete in that regard. The trial court then found, on the basis of the evidence presented at trial, that the victim had been abducted for a sexual purpose and accordingly ordered the defendant to register as a sex offender pursuant to § 54-254 (a).[4]

Following the judgment of conviction rendered in accordance with the jury's verdict, the defendant appealed to the Appellate Court, claiming that the trial court improperly "(1) found that the evidence was sufficient to prove that the defendant had committed the offense of kidnapping in the second degree for a sexual purpose within the meaning of § 54-254 (a), (2) instructed the jury concerning reasonable doubt, (3)

---

[4] In ruling on the state's motion, the court concluded, "on the basis of the evidence presented at trial, that the defendant's purpose in his actions with regard to . . . kidnapping in the second degree . . . [was] to sexually assault the victim . . . when he forced her at knifepoint to drive to a secluded area . . . off a main road and onto a dirt road, which led to apparently nowhere. . . . And [the victim], as I recall, was directed to bring the car to a stop and ordered out of the car, still at knifepoint, and to accompany the defendant to a wooded area. . . . [T]he defendant's claim that . . . in . . . directing her into the wooded area . . . he merely was attempting to make easier his escape and the victim's detection in what direction he was traveling . . . is entirely implausible. It's the court's finding that . . . the kidnapping in the second degree was committed for sexual purposes, pursuant to § 54-254."

marshaled the evidence in its [jury] charge by referring to an element of the crime while discussing the evidence that was presented during trial and (4) denied the defendant's motion to suppress his confession to the police." *State* v. *Pierce*, supra, 69 Conn. App. 518.

Before reaching the claim that the trial court had abused its discretion when it required the defendant to register as a sex offender pursuant to § 54-254 (a), the Appellate Court asked the parties to address the supplementary issues raised after oral argument in that court. In specific, the Appellate Court requested that the parties file simultaneous supplemental briefs addressing the following issues: "Is . . . § 54-254 (a) a sentence enhancement statute?[5] A. If it is a sentence enhancement statute, what is the proper procedure to be followed? See *Apprendi* v. *New Jersey*, 530 U.S. 466 [120 S. Ct. 2348, 147 L. Ed. 2d 435] (2000). B. If it is not a sentence enhancement statute, must the court hold an evidentiary hearing before finding that the defendant has committed a felony for a sexual purpose and what is the standard of proof to be applied at the hearing?"

The state claimed in its supplemental brief that the supplemental issues were "unpreserved and waived" because they were not raised at trial and were not originally briefed. The state asserted further that it

---

[5] We note that the issue of whether the imposition of registry requirements pursuant to § 54-254 (a) is a sentence enhancement has been resolved by this court in *State* v. *Waterman*, 264 Conn. 484, 492–93, 498, 825 A.2d 63 (2003), wherein we held that the registration requirement of the statutory scheme known as Megan's Law; General Statutes § 54-250 et seq.; is a separate regulatory incident of the criminal judgment of conviction and therefore the trial court retained jurisdiction, even after the judgment was rendered, with respect to making the finding necessary to trigger the registration requirement. We noted therein that the registration requirement is not punitive in nature, but, rather, is ministerial, and that making the factual finding and informing the defendant of the registration requirement did not necessitate any modification, opening or correction of the defendant's sentence. *State* v. *Waterman*, supra, 497.

"[did] not concede reviewability of the supplemental issues or consent to their consideration by [the Appellate Court]." In addressing the state's claims, the Appellate Court stated in its opinion that it "would not have asked for supplemental briefs had [it] believed the issues were not reviewable, nor [does the court] need the consent of the parties to review issues [it] deem[s] relevant." *State* v. *Pierce*, supra, 69 Conn. App. 521. The Appellate Court thereafter determined that it could review the claims under the plain error doctrine; id., 521–22; and it ultimately affirmed the defendant's conviction and reversed the judgment "only to the extent that the trial court ordered the defendant to register as a [sex] offender without a hearing to determine whether the offense was committed for a sexual purpose." Id., 518–19. The Appellate Court remanded the case to the trial court for a hearing to make that determination. Id., 538.

The state petitioned this court for certification to appeal and we granted the petition, limited to the following issues: "1. Did the Appellate Court properly invoke the 'plain error' doctrine in this case? 2. Did the Appellate Court properly construe . . . § 54-254 (a)? [and] 3. Did the Appellate Court properly reverse the requirement that the defendant register as a sexual offender and order a hearing to determine whether the defendant committed the offense of kidnapping for a sexual purpose?" *State* v. *Pierce*, 261 Conn. 914, 806 A.2d 1056 (2002). We answer the first question in the negative and, accordingly, we reverse the judgment.[6]

[6] The state's second claim is that, even if the Appellate Court properly invoked the plain error doctrine, it improperly determined that, as a matter of due process, a posttrial hearing is required prior to the imposition of a sex offender registration. Its third claim is that, even if the Appellate Court properly invoked the plain error doctrine and properly construed § 54-254 (a), it improperly reversed the judgment and remanded the case for a hearing because the record discloses that a posttrial hearing had been held. Because we reverse the judgment of the Appellate Court on the first issue, we do not reach the second and third certified questions.

Our jurisprudence regarding the plain error doctrine is well established. As we recently repeated: "[p]lain error review is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . *State* v. *Whipper*, 258 Conn. 229, 279–80, 780 A.2d 53 (2001); see also *State* v. *Vega*, 259 Conn. 374, 394, 788 A.2d 1221 (2002) (plain error is not even implicated unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings . . .), cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2003). Under this rubric, [a]n important factor in determining whether to invoke the plain error doctrine is whether the claimed error result[ed] in an unreliable verdict or a miscarriage of justice. . . . *State* v. *Fitzgerald*, 257 Conn. 106, 111, 777 A.2d 580 (2001)." (Internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 416, 844 A.2d 810 (2004); see also *State* v. *Schiappa*, 248 Conn. 132, 166, 728 A.2d 466 ("[p]lain error review is reserved for truly extraordinary situations . . . and is not even implicated unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings" [citation omitted; internal quotation marks omitted]), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999); *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 39, 699 A.2d 101 (1997) (plain error for trial court to fail to apply applicable statute); *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 37, 664 A.2d 719 (1995) (plain error for trial court to rely on improper statute).

The Appellate Court in the present case reviewed the supplemental claim pursuant to the plain error doctrine based upon this court's application of that doctrine in *State* v. *Velasco*, 253 Conn. 210, 751 A.2d 800 (2000), and concluded that plain error review was warranted

because "[t]he application and interpretation of § 54-254 (a) is strictly a question of law that requires no finding of facts, the review might result in the reversal of a miscarriage of justice, is in the interest of public welfare or of justice between the parties, and neither party is prejudiced by our decision to invoke the doctrine because each was afforded an opportunity to present arguments regarding the interpretation of § 54-254 (a)." *State* v. *Pierce*, supra, 69 Conn. App. 522.[7] The Appellate Court then determined that § 54-254 (a) is not a sentence enhancement statute; id., 529; but that the defendant was entitled to a hearing to be conducted by the trial court, and the fact that the crime was committed for a sexual purpose must be found by a fair preponderance of the evidence. Id., 532.

"As a threshold matter, we first consider the issue of whether the Appellate Court improperly invoked the plain error doctrine . . . ." *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 195, 520 A.2d 208 (1987), overruled in part on other grounds, *Curry* v. *Burns*, 225 Conn. 782, 786, 626 A.2d 719 (1993). Practice Book § 60-5 provides in relevant part that a "court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." We note that "[o]n certification, therefore, the scope of our review is limited to determining whether the Appellate Court abused its discretion in granting review under the plain error doctrine." *Finley* v. *Aetna Life & Casualty Co.*, supra, 196.

---

[7] In *State* v. *Velasco*, supra, 253 Conn. 218–19 n.9, this court determined that because its analysis was based on statutory construction, and the issue therein raised questions in the public interest and of justice between the parties, the case could be reviewed under the plain error doctrine; Practice Book § 60-5; even if it was not reviewable under the precepts of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Before this court, the state essentially renews the claims it made in its brief to the Appellate Court as to why the supplemental issues properly should not be considered. Specifically, the state contends that, at trial, the defendant's sole claim was that there was insufficient evidence of a "sexual purpose" for his crimes, and that this was also his position before the Appellate Court. Moreover, when the Appellate Court on its own raised the specter of sex offender registration being a sentence enhancement, the defendant's appellate counsel acknowledged that he had considered raising the claim but ultimately rejected the idea. Thus, according to the state, the claim that § 54-254 is a sentence enhancement was waived. Although the defendant disputes that the claim had been waived, on the basis of our review of the record, we agree with the state. In *State* v. *Miller*, 202 Conn. 463, 469, 522 A.2d 249 (1987), this court held that the defendant's claim that the trial court had not followed the requirements of Practice Book § 847 (now § 16-3) and General Statutes §§ 1-23 and 1-25 in administering oaths to the voir dire panel and petit jurors did not warrant review under the plain error doctrine in part because "the defendant's acquiescence throughout trial [in the trial court's administration of defective oaths] constituted a waiver of any objection to the trial court's deviation from the statutory language governing the administration of oaths."

Additionally, the state claims that the application of the plain error doctrine was inappropriate essentially because it is never plain error for a court to act in accordance with the law. Again, despite the defendant's assertions that the doctrine was properly invoked, we agree with the state. As we stated in *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 768, 717 A.2d 150 (1998), when we rejected the defendant's argument that his belated, unpreserved claim challenging the trial court's jury instructions regarding a claim of wrongful

discharge from employment required reversal under the plain error doctrine: "The defendant's claim does not raise an issue of federal statutory or constitutional law. [The defendant] presumes that, having once looked to a federal precedent to interpret our statute, we will thereafter adopt, in lockstep fashion, subsequent federal reinterpretation of federal law. It is not plain error for a trial court to follow Connecticut law. Plain error requires reversal only in truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . *Williamson* v. *Commissioner of Transportation*, 209 Conn. 310, 317, 551 A.2d 704 (1988); see, e.g., *State* v. *Preyer*, 198 Conn. 190, 198–99, 502 A.2d 858 (1985) (finding plain error when recent legislative change led trial court expressly to preclude jury from considering defense that was in fact preserved by statute)." (Internal quotation marks omitted.) We are not persuaded that the present case presents this type of extraordinary situation. Thus, the plain error doctrine should not be applied in order to review a ruling that is not arguably incorrect in the first place.

In the present case, the trial court acted pursuant to a presumptively valid statute in accordance with its express provisions. In other words, by finding that the defendant had committed a felony for a sexual purpose, the trial court complied with § 54-254 (a) as written. Accordingly, we are not persuaded "that the defendant has illustrated the existence of a manifest injustice, such that we would apply plain error review." *State* v. *Lemoine*, 256 Conn. 193, 208, 770 A.2d 491 (2001). Therefore, we conclude that the Appellate Court abused its discretion by invoking the plain error doctrine to decide the supplementary issues pertaining to § 54-254 (a).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reinstate the registry requirement imposed by the trial court.

In this opinion the other justices concurred.