STATE OF CONNECTICUT *v.* EDWARD R. DALZELL
(SC 17736)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued March 14—officially released June 19, 2007

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Steven J. Sedensky III*, senior assistant state's attorney, for the appellant (state).

*Elizabeth M. Inkster*, senior assistant public defender, for the appellee (defendant).

*Opinion*

ZARELLA, J. The state appeals, following our grant of certification,[1] from the judgment of the Appellate Court reversing in part the judgment of the trial court. The defendant, Edward R. Dalzell, was convicted, following his conditional plea of nolo contendere, of possession of narcotics with the intent to sell in violation of General Statutes § 21a-277 (a), possession of narcotics in violation of General Statutes § 21a-279 (a), possession of drug paraphernalia in violation of General Statutes (Rev. to 2003) § 21a-267 (a), operating a motor vehicle while under the influence of drugs in violation of General Statutes (Rev. to 2003) § 14-227a (a) and failure to wear a seat belt in violation of General Statutes (Rev. to 2003) § 14-100a (c) (1). The state claims that the Appellate Court improperly decided this case on the basis of a claim of lack of probable cause to conduct a search of the defendant's vehicle and to arrest the defendant that never was properly raised or briefed before that court. As an alternate ground for affirming the Appellate Court judgment, the defendant claims that the Appellate Court incorrectly concluded that the

---

[1] This court granted the state's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly reach the question whether the defendant's arrest for operating a motor vehicle while under the influence of drugs was based on probable cause, and, if so, did it properly conclude that probable cause was lacking?" *State* v. *Dalzell*, 280 Conn. 914, 908 A.2d 539 (2006).

police had not engaged in a pretextual stop of his vehicle in violation of his rights under the state constitution. We reverse in part[2] the judgment of the Appellate Court because the issue of probable cause was not properly raised or briefed before that court and because the record is inadequate for review of the defendant's claim of pretext under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

The following facts and procedural history are relevant to our resolution of the issues raised on appeal. At approximately noon on February 27, 2004, Adam Marcus, a police officer with the Danbury police department, observed the defendant driving his vehicle northbound on Balmfourth Avenue in Danbury. Marcus further observed that the defendant was not wearing a shoulder harness type of seat belt. Marcus stopped the defendant's vehicle and proceeded to check the defendant's license plate number with the police dispatcher to determine whether the vehicle was registered properly with the department of motor vehicles. After determining that the vehicle was registered properly, Marcus exited his vehicle, approached the defendant's vehicle, noted that the defendant was not wearing a lap belt and notified him that he was being stopped for failure to wear a seat belt. Marcus then requested the defendant's operator's license, registration and proof of insurance. The defendant removed an envelope from the glove compartment of his vehicle and began searching it for the requested information. Marcus observed the defendant as the defendant was attempting to find his registration. Marcus saw that the defendant's pupils were contracted and that his nose was red around the nostrils and running. Marcus described the defendant as "slow and lethargic" while the defendant was search-

---

[2] We affirm that part of the Appellate Court's judgment affirming the defendant's conviction of failure to wear a seat belt in violation of § 14-100a (c) (1).

ing for his registration and also noticed that the defendant had "passed over" his registration several times during his search. At the same time, Marcus observed a rolled up dollar bill on the console located between the front seats of the defendant's vehicle. After observing the defendant, Marcus asked him whether he had used narcotics. The defendant replied, "No, and I'm not getting out of the vehicle, so start writing me a ticket." Marcus informed the defendant that he suspected that the defendant was under the influence of narcotics and requested that the defendant exit the vehicle. After the defendant refused Marcus' request, the officer opened the door to the vehicle, grabbed the defendant by the arm, escorted him out of the vehicle and placed him under arrest for operating a motor vehicle while under the influence of drugs.

After placing the defendant under arrest, Marcus performed an inventory search of the defendant's vehicle prior to having it towed. Marcus secured the rolled up dollar bill that he previously had viewed and noted that it contained white powder residue. The residue later field tested positive for heroin. In the vehicle, Marcus also discovered a cigarette pack that contained four small glassine packets that were stamped "red devil" in red ink and contained white powder. A field test of that substance indicated that it also was heroin. The defendant was charged with possession of narcotics with the intent to sell, possession of narcotics, possession of drug paraphernalia, operating a motor vehicle while under the influence of drugs and failure to wear a seat belt.

On August 25, 2004, the defendant filed motions to suppress statements that he had made to the police and evidence obtained through the inventory search of his vehicle. Following an evidentiary hearing, the court denied the defendant's motions to suppress. Thereafter, the defendant entered a conditional plea of nolo conten-

dere on all of the charges, and the trial court rendered judgment in accordance with the defendant's plea.[3]

The defendant appealed to the Appellate Court, claiming that Marcus' initial stop of the defendant's vehicle was a pretextual stop in violation of article first, §§ 7 and 9, of the Connecticut constitution.[4] Specifically, the defendant argued that, because there was no reasonable and articulable suspicion to justify the initial stop, the seat belt violation was merely a pretext to search for evidence of an unrelated crime or crimes. The Appellate Court concluded that, because Marcus had observed the defendant operating his vehicle without wearing a shoulder harness type seat belt, he had a reasonable and articulable suspicion that the defendant was violating § 14-100a (c), which justified the initial stop of the vehicle. *State* v. *Dalzell*, 96 Conn. App. 515, 524, 901 A.2d 706 (2006). The Appellate Court further noted that the record did not indicate "any ulterior or different motive of the officer for the stop." Id., 526. The Appellate Court reversed in part the judgment of the trial court, however, on the basis that "there was no probable cause justifying the seizure and arrest of the defendant for operating a motor vehicle while under the influence

---

[3] On January 12, 2005, the defendant was sentenced to a total effective term of five years imprisonment for possession of narcotics with the intent to sell, possession of drug paraphernalia and operating a motor vehicle while under the influence of drugs. The charge of possession of narcotics was merged with the charge of possession of narcotics with the intent to sell. The defendant also was ordered to pay a $15 fine for failure to wear a seat belt and a $500 fine for operating a motor vehicle while under the influence of drugs.

[4] Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

Article first, § 9, of the constitution of Connecticut provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

of drugs or to search the car for drugs or drug paraphernalia." Id., 532. This certified appeal followed.

I

We first address the state's claim that the Appellate Court improperly reversed in part the judgment of the trial court on the ground of lack of probable cause when that issue never had been raised, argued or briefed by the parties before that court. The state contends that the Appellate Court improperly determined that the police lacked probable cause to seize and arrest the defendant, and subsequently to search his vehicle. We conclude that the Appellate Court improperly reversed in part the trial court's judgment on the ground of lack of probable cause.

"We long have held that, in the absence of a question relating to subject matter jurisdiction, the Appellate Court may not reach out and decide [an appeal] before it on a basis that the parties never have raised or briefed." *Sabrowski* v. *Sabrowski*, 282 Conn. 556, 560, 923 A.2d 686 (2007); see also *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 98–99, 644 A.2d 325 (1994); cf. *State* v. *Pink*, 274 Conn. 241, 244 n.3, 875 A.2d 447 (2005). "To do otherwise would deprive the parties of an opportunity to present arguments regarding those issues." *Sabrowski* v. *Sabrowski*, supra, 560; see also *Lynch* v. *Granby Holdings, Inc.*, supra, 99. If the Appellate Court decides to address an issue not previously raised or briefed, it may do so only after requesting supplemental briefs from the parties or allowing argument regarding that issue. Cf. *State* v. *Pierce*, 269 Conn. 442, 448–49, 849 A.2d 375 (2004).

Although the defendant raised the issue of probable cause before the trial court, neither party properly raised, briefed or argued the issue in the Appellate Court. A review of the defendant's Appellate Court brief indicates that the only issue raised was "[w]hether the

stop and subsequent search of [the] defendant's automobile for an alleged failure to wear a shoulder harness was a pretextual stop and search that cannot pass muster under article first, §§ 7 and 9, of the Connecticut constitution." After setting forth in his brief the nature of the proceedings and the factual basis for the claim, the defendant presented his argument regarding his claim of pretext. The entire thrust of the defendant's analysis in his Appellate Court brief was that, although Marcus had a reasonable and articulable suspicion that the defendant was not wearing a seat belt, the stop nonetheless was pretextual and, therefore, invalid under the state constitution.[5] The defendant recognized that his claim did not comport with the state of the law under our federal constitution and thus sought to demonstrate, under *State* v. *Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992),[6] that state constitutional protections exceed those guaranteed by the federal constitution.

---

[5] Although this court never has defined the term "pretextual" stop, and *we do not do so in the present case*, it is necessary to note that the defendant claims in his brief submitted to this court that "[a] pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop. The classic example . . . occurs when an officer stops a driver for a minor traffic violation in order to investigate a hunch that the driver is engaged in illegal drug activity."

[6] In *State* v. *Geisler*, supra, 222 Conn. 684–85, we enumerated six factors that we consider in analyzing independent claims under the Connecticut constitution: "(1) the text of the relevant constitutional provisions; (2) related Connecticut precedents; (3) persuasive federal precedents; (4) persuasive precedents of other state courts; (5) historical insights into the intent of our constitutional forebears; and (6) contemporary understandings of applicable economic and sociological norms." *State* v. *Estrella*, 277 Conn. 458, 488 n.18, 893 A.2d 348 (2006). "We repeatedly have emphasized that we expect counsel to employ [the *Geisler* analysis] [i]n order to [allow us to] construe the contours of our state constitution and [to] reach reasoned and principled results . . . . When a party fails to analyze these factors separately and distinctly, [w]e have made clear that . . . we are not bound to review the state constitutional claim." (Citation omitted; internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 154 n.26, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

Specifically, the defendant claimed that, although, under *Whren* v. *United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996), the United States Supreme Court abandoned the use of a subjective test to analyze whether a stop is pretextual under the federal constitution, the state constitution affords an accused greater protection and thus requires an analysis of the subjective intent of the arresting officer. We note that, with the exception of two isolated and conclusory assertions that dealt exclusively with the defendant's state constitutional claim of pretext, the defendant never raised the issue of probable cause in his Appellate Court brief or at oral argument before the Appellate Court. Accordingly, we conclude that the Appellate Court improperly decided that issue.[7]

II

As an alternate ground for affirmance, the defendant claims that the Appellate Court incorrectly concluded that the police had not engaged in a pretextual stop of his vehicle in violation of his rights under the state constitution. The state claims that the issue was not raised and preserved in the trial court and, in fact, specifically was waived by the defendant. We therefore must determine whether this claim properly was preserved for review and, if not, whether the defendant may prevail under *State* v. *Golding*, supra, 213 Conn. 239–40.

As we previously noted, the defendant filed motions to suppress the statements that he had made to the police and the evidence that the police had obtained in connection with the search of the defendant's vehicle. A review of these motions reveals that none of them discusses, suggests or even uses the term "pretext." Furthermore, at the hearing on the motions to suppress,

---

[7] In light of our conclusion that the issue of probable cause should not have been decided by the Appellate Court, we need not reach the merits of this claim.

Marcus, the sole witness, testified as to his observations both before and during the stop. He testified that he had stopped the defendant's vehicle after observing that the defendant was not wearing his shoulder harness. He also testified that, during the stop, he observed that the defendant was sluggish, his pupils were contracted, his nose was red around the nostrils and running, and that there was a rolled up dollar bill in plain view. Marcus further testified that the defendant had refused to exit his vehicle when asked to do so. Defense counsel inquired about possible alternative explanations for these observations and argued that the facts did not support a finding of probable cause. The defendant did not raise the issue of whether Marcus stopped the defendant's vehicle on a seat belt infraction as a pretext to search for evidence of an unrelated crime.

Nevertheless, the defendant claims that the issue properly was preserved on the basis of a single statement by defense counsel at the suppression hearing. When summarizing the defendant's case, defense counsel stated: "My position is the officer was looking for something more. And he was using the pretext of the seat belt and the operating under the influence as the basis to search the vehicle, because he knew that he couldn't search it for any other reason." Notwithstanding the use of the term "pretext," defense counsel's statement is clearly insufficient to preserve this constitutional claim on appeal. Defense counsel's use of the term "pretext" at the suppression hearing was in the context of his argument regarding the lack of probable cause. In other words, defense counsel used "pretext" in the sense that Marcus' observations regarding the defendant's runny nose, contracted pupils and the rolled up dollar bill should not be credited because he was looking for an excuse to search the vehicle. This was confirmed when defense counsel further stated at the suppression hearing that *"there may be an argu-*

*ment made with regard to a pretextual stop, but . . .
I hate—I would not want to address that issue because
I know our Connecticut Supreme Court has recently
addressed that. . . .* What we have here is [a] stop
made by a police officer ostensibly based [on] the infor-
mation he had." (Emphasis added.) Thus, despite the
defendant's representation in his Appellate Court brief
that he "filed written motions to suppress evidence and
statements, pursued an evidentiary hearing thereon,
and argued extensively that the stop was pretextual,"
a review of the record reflects the opposite. The defen-
dant did not present the trial court with any argument
that the state constitution provides an accused with
greater protection than the federal constitution, cited
no case law that would place the state or the court on
notice of his claim, did not offer any analysis based on
the factors articulated in *Geisler*, and suggested that he
was not raising such a claim. Accordingly, the defendant
did not adequately preserve his claim of pretext for
appellate review.[8]

Alternatively, the defendant now seeks to prevail on
his claim under *Golding*. Under *Golding*, "a defendant
can prevail on a claim of constitutional error not pre-
served at trial only if all of the following conditions are
met: (1) the record is adequate to review the alleged
claim of error; (2) the claim is of constitutional magni-
tude alleging the violation of a fundamental right; (3)
the alleged constitutional violation clearly exists and
clearly deprived the defendant of a fair trial; and (4) if
subject to harmless error analysis, the state has failed to
demonstrate harmlessness of the alleged constitutional
violation beyond a reasonable doubt." *State* v. *Golding*,
supra, 213 Conn. 239–40. "We note, moreover, that *Gold-
ing* is a narrow exception to the general rule that an

---

[8] In light of our conclusion that the defendant did not adequately preserve
the issue of whether the stop was pretextual, we need not reach the issue
of whether the defendant specifically waived the issue on appeal.

appellate court will not entertain a claim that has not been raised in the trial court. The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . Nevertheless, because constitutional claims implicate fundamental rights, it also would be unfair automatically and categorically to bar a defendant from raising a meritorious constitutional claim that warrants a new trial solely because the defendant failed to identify the violation at trial. *Golding* strikes an appropriate balance between these competing interests: the defendant may raise such a constitutional claim on appeal, and the appellate tribunal will review it, but only if the trial court record is adequate for appellate review. The reason for this requirement demands no great elaboration: in the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred. Thus, as we stated in *Golding*, we will not address an unpreserved constitutional claim [i]f the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Brunetti*, 279 Conn. 39, 55–56, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007). Furthermore, for any *Golding* claim, "[i]t is incumbent [on] the [defendant] to take the necessary steps to sustain [his] burden of providing an adequate record for appellate review. . . . Our role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's] claims would be entirely speculative." (Internal quotation marks omitted.) Id., 63.

In the present case, the defendant did not meet his burden of establishing an adequate record for appellate review with respect to the issue of pretext. The defendant is claiming that, even if the stop of his vehicle was legal, it nevertheless was a pretext for a search that was motivated by a suspicion that some other crime was afoot. The defendant claims that, although such a stop comports with the federal constitution, it nevertheless is prohibited by the state constitution. Without deciding whether this type of stop violates the state constitution, we note that a resolution of the defendant's claim necessarily requires a factual determination regarding Officer Marcus' motivation for stopping the defendant for a seat belt infraction. Factual determinations must be made by the trial court, however, and the trial court in the present case made no findings regarding Marcus' motivation for stopping the defendant's vehicle. Furthermore, to allow this claim to be presented for the first time on appeal would work a grave injustice on the state as it did not have any opportunity to develop a factual record to dispute the defendant's claim of pretext.

The defendant claims that the fact that Marcus followed the defendant approximately one mile after observing his seat belt infraction before stopping his vehicle is adequate to form the basis for review of the claim that the seat belt infraction was merely a pretext to stop the vehicle and to perform a search for evidence of an unrelated crime. We disagree. The mere fact that Marcus followed the defendant for approximately one mile before the stop, without any evidence as to why he followed the defendant, is not adequate to form the basis for our review of a claim of pretext. As we stated previously, a claim of pretext requires evidence of the underlying reason why the officer stopped the vehicle. The trial court made no finding of fact that would indicate that the stop was pretextual. The court only deter-

mined that the stop for failure to wear a seat belt was legal. In sum, without an adequate evidentiary basis, we are only left to "guess at [the] possibilities" of why Marcus stopped the defendant's vehicle on the pretext of the defendant's seat belt infraction. (Internal quotation marks omitted.) Id.

Because the defendant never adequately adduced evidence regarding pretext at the suppression hearing, the record does not contain, and the trial court never articulated, the facts necessary for this court to evaluate his claim. Consequently, the defendant has failed to satisfy the first prong of *Golding* because the record is inadequate to review his claim of pretext.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to affirm the judgment of the trial court in its entirety.

In this opinion the other justices concurred.