******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

NICHOLAS ADAMS *v.* COMMISSIONER
OF MOTOR VEHICLES*

Superior Court, Judicial District of New Britain
File No. CV-16-6033742-S

Memorandum filed March 7, 2017

*Proceedings*

Memorandum of decision on plaintiff's appeal from decision by defendant suspending the plaintiff's motor vehicle operator's license. *Appeal dismissed.*

*Jonathan Ross Sills*, for the plaintiff.

*Drew S. Graham*, assistant attorney general, for the defendant.

*Opinion*

HUDDLESTON, J. The plaintiff, Nicholas Adams, appeals from the decision of the defendant Commissioner of Motor Vehicles (commissioner) suspending his driver's license for forty-five days and requiring him to install and maintain an ignition interlock device for one year for operating a motor vehicle under the influence of drugs or alcohol. The plaintiff asserts that the hearing officer violated his right to due process, that the record lacks substantial evidence that he was operating a motor vehicle, that there was no probable cause for his arrest, and that there is insufficient evidence to support the finding that he refused a urine test. Most of these claims were not asserted in the hearing and therefore are not properly before the court. Even if they had been properly preserved, the plaintiff's claims are not supported by the record. The plaintiff's appeal is dismissed.

## FACTS AND PROCEDURAL HISTORY

At about 4:44 a.m. on May 14, 2016, the Stonington police were dispatched to investigate a report that a motor vehicle had struck a telephone pole and then left the scene. Officer Ryan Armstrong immediately responded and began checking the area. He came upon two vehicles on Pawcatuck Avenue. One was a disabled vehicle with significant front end damage consistent with hitting a telephone pole. The other was operated by a witness who had followed the first vehicle after the accident occurred. Armstrong approached the vehicle with front end damage. The plaintiff was standing outside it. Armstrong asked whether he needed medical assistance, and he stated that he did not. When Armstrong asked what had happened, the plaintiff stated that he struck a traffic cone in the roadway when he turned from Mechanic Street onto Clark Street. He denied having hit the telephone pole on Mechanic Street even after Armstrong remarked that a traffic cone would not cause the damage to his vehicle that was evident. Armstrong asked the plaintiff why he had fled the accident scene, and he replied that he had attempted to stop but his brakes had malfunctioned. Armstrong observed that the location of the accident was about a half mile from the location where the plaintiff's car was found with several stretches of uphill grades between the two locations. Armstrong asked the plaintiff when the accident occurred. He replied that it happened at approximately 4:45 a.m. Supp. Return of Record[1] (ROR), A-44, narrative, pp. 1–2.

Armstrong observed that the plaintiff appeared very drowsy, with droopy eyelids. His movements were very slow and he spoke in a low, raspy voice. Armstrong told the plaintiff that he was going to conduct field sobriety tests, and the plaintiff "immediately volunteered" to take a Breathalyzer test. The plaintiff denied

having used alcohol or drugs of any kind. ROR, A-44, narrative, p. 2.

Armstrong administered three standardized field sobriety tests. In administering the horizontal gaze nystagmus test, Armstrong noted that the pupils of the plaintiff's eyes were constricted, which Armstrong recognized as a sign of narcotic use. After the plaintiff failed all three sobriety tests, Armstrong placed him under arrest and transported him to the police station. ROR, A-44, narrative, pp. 2–4.

Before leaving the scene, Armstrong spoke with the witness, who said she was sitting in her residence when she heard a loud crash and the power went out. She looked outside her window and saw the plaintiff's vehicle traveling down Pawcatuck Avenue. She followed his vehicle. When it stopped and she made contact with the plaintiff, he asked her not to notify the police. ROR, A-44, narrative, p. 4.

At the police station, the plaintiff was advised of his *Miranda* rights[2] and offered the opportunity to contact an attorney, which he declined. He denied alcohol or drug use and elected to submit to a breath test. The first sample, taken at 5:50 a.m., showed a 0.000 percent blood alcohol content. Armstrong then asked the plaintiff to provide a urine sample. The plaintiff said he wanted to speak with an attorney. After several failed attempts to reach an attorney, he spoke with a family member and then elected to refuse to provide a urine sample. ROR, A-44, narrative, p. 4.

After the breath test, the plaintiff stated that he was having difficulty breathing and complained of chest pains. An ambulance responded to the booking room, examined the plaintiff, and suggested that he be transported to the hospital for further evaluation. He refused transport to the hospital. ROR, A-44, narrative, p. 5.

The plaintiff was charged with operating under the influence of alcohol or drugs in violation of General Statutes § 14-227a and with other motor vehicle violations. Id. The Department of Motor Vehicles (department) thereafter notified the plaintiff that his license would be suspended for forty-five days, and he would be required to install and maintain an ignition interlock device in his vehicle. ROR, Item 1. The plaintiff requested an administrative hearing, which was held on June 8, 2016. The plaintiff appeared with counsel. At the hearing, the A-44 form, with attached reports, was introduced as an exhibit without objection. ROR, transcript, p. 2. The plaintiff's counsel commented that the copy of the A-44 he had received before the hearing had not been notarized, but he acknowledged that the copy introduced into evidence was notarized. ROR, transcript, pp. 3–4. He argued to the hearing officer that "they have not proven operation; number one. And number two, they can't prove the time of operation as

to whether it was if in two hours or not." ROR, transcript, p. 4. He argued that his client had been disoriented by the collision and that his client was cooperating with the police. Despite evidence that the plaintiff had refused transport to a hospital, his attorney asserted that the plaintiff had to go to the hospital and commented that there were no hospital records of a "drug tox." ROR, transcript, pp. 4–5. The plaintiff then testified that when he was at the police station, he was not able to reach his lawyer by telephone and did not recall speaking to any family member. ROR, transcript, p. 8. The hearing then concluded.

The hearing officer subsequently found that the police had probable cause to arrest the plaintiff for a violation specified in General Statutes § 14-227b, the plaintiff was placed under arrest, he refused to submit to a test, and he was operating a motor vehicle. In a subordinate finding, the hearing officer found that "[t]he police report supports an affirmative finding on all four issues of fact." ROR, p. 3. This appeal followed.

## ANALYSIS

This appeal is brought pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-183.[3] Judicial review of the commissioner's action is very restricted. *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000). "[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither [the Supreme Court] nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) Id.

"General Statutes § 14-227b, commonly referred to as the implied consent statute, governs license suspension hearings." *Santiago* v. *Commissioner of Motor Vehicles*, 134 Conn. App. 668, 674, 39 A.3d 1224 (2012). Section 14-227b (g) provides in relevant part that "[t]he hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle. . . ."

A license suspension hearing is expressly limited to these four issues. *Buckley* v. *Muzio*, 200 Conn. 1, 7, 509 A.2d 489 (1986). In this case, the hearing officer affirmatively found that each of these requirements was met.

The standard of proof under the UAPA is not so exacting as in a criminal case, where proof beyond a reasonable doubt is required. *O'Rourke* v. *Commissioner of Motor Vehicles*, 33 Conn. App. 501, 508, 636 A.2d 409, cert. denied, 229 Conn. 909, 646 A.2d 1205 (1994). In an administrative hearing, "the agency need only produce probative and reliable evidence to ensure that the proceedings are fundamentally fair." (Internal quotation marks omitted.) Id.

## I

The plaintiff first argues that there is insufficient proof that he was operating the vehicle because none of the officers involved in his arrest observed him operating the vehicle at any time and the lay witness who followed his vehicle did not give a sworn statement. The court disagrees. Even without the statement of the lay witness, the plaintiff's own admissions, as reported by the arresting officer, provide substantial evidence of his operation of the vehicle.

"The absence of witnesses to the plaintiff's operation of the vehicle is not dispositive on the issue of operation." *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 347. In addition, the standard of proof is not so exacting as in a criminal case, where proof beyond a reasonable doubt is required. *O'Rourke* v. *Commissioner of Motor Vehicles*, supra, 33 Conn. App. 508. In an administrative hearing, "the agency need only produce probative and reliable evidence to ensure that the proceedings are fundamentally fair." (Internal quotation marks omitted.) Id.

The narrative portion of the police report indicates that the arresting officer, Armstrong, found the plaintiff standing beside a vehicle with substantial front end damage and asked the plaintiff what had happened. The plaintiff said that he had been traveling south on Mechanic Street, then turned onto Clark Street and struck a traffic cone in the roadway. He denied having hit a telephone pole on Mechanic Street even though a traffic cone could not have caused the damage to his vehicle. When asked why he did not stop when he had the accident, he said that he attempted to stop but his brakes malfunctioned. The plaintiff's own statements to Armstrong are substantial evidence that he was operating his vehicle until it stopped in the location where Armstrong found him.

## II

The plaintiff argues that the police lacked probable cause to arrest him for operating under the influence of drugs or alcohol because there was insufficient evi-

dence of intoxication and insufficient evidence of a temporal nexus between any intoxication and the operation of the vehicle. In support of this argument, the plaintiff claims that Armstrong did not suspect the plaintiff of alcohol use because the report does not mention an odor of alcohol or other typical symptoms of alcohol intoxication, such as slurred speech, confusion, or balancing issues. He argues that Armstrong suspected narcotics use but used field sobriety tests designed solely to test alcohol use. He further argues that there is no evidence that Armstrong was trained in administering the field sobriety tests or administered them properly.

The plaintiff made only one of these arguments to the hearing officer, and then only in an incoherent form. His counsel at the hearing (not the counsel on appeal) argued "they have not proven operation; number one. And number two, they can't prove the time of the operation as to whether it was if in two hours or not." ROR, transcript, p. 4. He did not offer any evidence or make any arguments at the hearing that the tests given were inappropriate.

A plaintiff cannot raise issues on appeal that he failed to present to the hearing officer below. See *Solomon* v. *Connecticut Medical Examining Board*, 85 Conn. App. 854, 862, 859 A.2d 932 (2004), cert. denied, 273 Conn. 906, 868 A.2d 748 (2005); see also *Valente* v. *Commissioner of Motor Vehicles*, Superior Court, judicial district of New Britain, Docket No. CV-15-6029369-S (October 19, 2015) (*Schuman, J.*) (61 Conn. L. Rptr. 138), aff'd, 169 Conn. App. 908, 155 A.3d 328 (2016).

The plaintiff's arguments are unconvincing as well as unpreserved. Under Connecticut law, "[i]t is fundamental that a plaintiff has the burden of proving that the commissioner, on the facts before him, acted contrary to law and in abuse of his discretion [in determining the issue of probable cause]. . . . The law is also well established that if the decision of the commissioner is reasonably supported by the evidence it must be sustained." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 343–44. "Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . In determining whether there was probable cause to arrest for operating a motor vehicle while under the influence of liquor, the court may consider, just as in an arrest for any other criminal offense, circumstantial as well as direct evidence." (Internal quotation marks omitted.) *Pizzo* v. *Commissioner of Motor Vehicles*, 62 Conn. App. 571, 578, 771 A.2d 273 (2001). "To establish probable cause, it is not necessary to produce a quantum of evidence necessary to convict. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administra-

tive agency, and this court cannot disturb the conclusions reached by the [hearing officer] if there is evidence that reasonably supports his decision." (Internal quotation marks omitted.) Id. "[O]ur case law clearly establishes that sufficient evidence justifying the commissioner's determination of probable cause may be found where the totality of the circumstances existing at the time of the plaintiff's arrest support[s] [such a finding] . . . ." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, supra, 345.

In this case, under "probable cause to arrest" on the A-44 form, Armstrong checked the boxes "motor vehicle crash" and "standardized field sobriety tests." Armstrong's narrative report included evidence that the plaintiff had reportedly struck a telephone pole and his vehicle had sustained major front end damage consistent with striking a telephone pole; the plaintiff insisted that he had hit a traffic cone even though a traffic cone could not have caused the damage to his front end; the plaintiff said that he tried to stop at the accident scene but his brakes malfunctioned, even though there were several stretches of uphill grade between the location of the accident and the point where his vehicle stopped; the plaintiff appeared very drowsy and moved very slowly; his pupils were constricted, his eyelids were drooping, and the conjunctiva of his eyes were reddened.

The plaintiff relies on *State* v. *Dalzell*, 96 Conn. App. 515, 901 A.2d 706 (2006), rev'd in part, 282 Conn. 709, 924 A.2d 809 (2007), overruled in part by *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 162 n.34, 84 A.3d 840 (2014), to argue that the symptoms observed by the officer—drowsiness, droopy eyelids, red eyes with constricted pupils—were all consistent with innocent explanations, such as fatigue or shock. In *Dalzell*, the arresting officer saw the defendant driving a 1991 Ford Escort without a shoulder harness type of seatbelt. Id., 518. He followed the defendant for about a mile, during which time the defendant observed all traffic rules. Id. When he stopped the defendant for the seatbelt violation, he noted that the defendant's eyes were contracted and his nose was red and running. Id., 519. The defendant was not wearing sunglasses and it was about noon on a clear, sunny day. Id. The defendant fumbled for a few seconds before retrieving his license and registration information. Id., 519–20. The officer saw a rolled dollar bill in the center console of the defendant's car and suspected him of using narcotics. Id., 520. The defendant refused to submit to field sobriety tests. After arresting the defendant for operating under the influence of narcotics, the officer searched the car, found narcotics, and added drug charges. Id., 520–21. The defendant moved to suppress the evidence of the drugs on the ground that there was not probable cause to arrest him for operating under the influence. Id., 531.

The Appellate Court agreed. It reasoned as follows: "A driver operating a motor vehicle while under the influence of a drug is one whose mental, physical or nervous processes have become so affected that he lacked to an appreciable degree the ability to function properly in the operation of his vehicle. . . . Typical indicia of the inability to function as a driver because of the intoxicating effect of drugs or alcohol include whether a defendant smells of the drug, has slurred speech, fumbles in retrieving paperwork, has glassy and bloodshot eyes, admits that he has, while driving, been using drugs or fails sobriety tests. . . . Most importantly, the main indicia of intoxication relates to the ability to operate the vehicle without committing traffic violations." (Citations omitted.) Id., 528–29. In *Dalzell*, the court observed that the defendant "used his signals correctly and observed all posted signs, speed limits, traffic control signals and markings. . . . To arrive at the conclusion that probable cause existed, one must ignore the fact that, except for the seat belt violation, the defendant operated his motor vehicle in a manner consistent with that of an ordinary, careful and prudent driver over a considerable distance on multiple city roads." Id., 529–30.

The same cannot be said for the plaintiff here. He clearly had not been able to operate his vehicle in a manner consistent with that of an ordinary, careful and prudent driver. Although he denied striking the telephone pole, he had clearly struck something substantial, sustaining major front-end damage to his car, and then left the scene of his accident. Moreover, his eyes were bloodshot and his pupils constricted, not at noon on a sunny day, but before five o'clock in the morning. He failed all three field sobriety tests. He lost his balance while trying to walk, stopped repeatedly to steady himself, was uneasy on his feet, and his legs were shaking. This substantial circumstantial evidence supported the hearing officer's finding that there was probable cause to arrest the plaintiff for a violation of § 14-227a, as required for a license suspension under § 14-227b.

Nor is there any merit to the plaintiff's claim that there was an insufficient temporal nexus between intoxication and operation. The police received the report of a vehicle crashing into a telephone pole at approximately 4:44 a.m. and Armstrong responded to the dispatch "immediately." ROR, narrative, p. 1. Armstrong located the plaintiff beside his stopped, damaged car, and the plaintiff told Armstrong that his accident had occurred at approximately 4:45 a.m. ROR, narrative, p. 2. Armstrong interviewed the plaintiff, conducted the field tests, and arrested the plaintiff by 5:14 a.m. ROR, narrative, p. 3. The evidence clearly supports a temporal nexus between the operation and the intoxication.

### III

The plaintiff argues that there is no substantial evi-

dence that he refused to submit to the second form of chemical testing. His argument is based on three claims: first, that the refusal is inadequately described in the police report; second, that the plaintiff's refusal was not properly witnessed; and third, that there was no reasonable basis for requiring a urine test after the plaintiff passed the breath test. None of these claims were brought to the attention of the hearing officer and therefore are not properly before the court. See *Solomon* v. *Connecticut Medical Examining Board*, supra, 85 Conn. App. 862. Even if these claims had been preserved, the plaintiff has not met his burden of proving that the hearing officer acted arbitrarily, illegally, or in abuse of her discretion in rejecting them.

A

As to the first claim, there is substantial evidence in the record that the plaintiff refused the urine test. The police report indicates that after Armstrong told the plaintiff he was requesting a urine sample, the plaintiff attempted unsuccessfully to reach an attorney and then "spoke with a family member and elected to refuse a urine sample."

The plaintiff cites *Bialowas* v. *Commissioner of Motor Vehicles*, 44 Conn. App. 702, 714–15, 692 A.2d 834 (1997), for the proposition that a conclusory statement alone is not sufficient to provide substantial evidence of refusal where there is no corroborating evidence, and only contradictory evidence, of refusal. *Bialowas*, however, does not apply here. In *Bialowas*, the police report stated that the accused "was explained all necessary procedures but failed to give a sufficient breath sample on three separate occasions . . . [t]herefore resulting in a refusal of the test." (Internal quotation marks omitted.) Id., 706. The Appellate Court concluded that "where it is undisputed that the motorist submitted to the chemical alcohol test, the fact that he failed to produce an adequate breath sample does not automatically constitute refusal within the meaning of § 14-227b." Id., 714–15. In such a circumstance, additional explanation was needed to support a conclusion that a failure to provide sufficient breath was, in fact, a refusal to take the test. Id., 716–17.

*Bialowas* thus stands for the proposition that when a person refuses a test by conduct—such as purporting to take the breath test but blowing improperly after repeated instructions—the police must document the conduct that constitutes the refusal. Here, however, the plaintiff expressly refused. Where the refusal is express, as here, no further description of the refusal is required. See *Fonville-Smith* v. *Commissioner of Motor Vehicles*, Superior Court, judicial district of New Britain, Docket No. 15-6029440-S (October 28, 2015) (*Schuman, J.*).

B

The plaintiff further argues that there is no substantial

evidence that the refusal was witnessed by a third party. Section 14-227b (c) provides in relevant part: "If the person arrested refuses to submit to such test or analysis . . . [t]he police officer shall prepare a report of the incident . . . . The report shall contain such information as prescribed by the Commissioner of Motor Vehicles and shall be subscribed and sworn to under penalty of false statement as provided by section 53a-157b by the arresting officer. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for a violation of subsection (a) of section 14-227a . . . and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so . . . ."

In *Mailhot* v. *Commissioner of Motor Vehicles*, 54 Conn. App. 62, 66, 733 A.2d 304 (1999), the court held that a refusal requires the presence of three persons: the accused, the arresting officer, and a third-party witness. In *Winsor* v. *Commissioner of Motor Vehicles*, 101 Conn. App. 674, 684–86, 922 A.2d 330 (2007), the court further held that all three persons—the accused, the arresting officer, and the third-party witness—must be physically present in the same room at the time of refusal.

The plaintiff's claim here that the refusal was not properly witnessed is based on the fact that in section F of the A-44 form, "Chemical Alcohol Test Data," the arresting officer wrote the date "5/19/2016" on the line indicating that the second test was a urine test, offered at 7:07 a.m., and the result was "refusal." Because the plaintiff was arrested on May 14, 2016, he argues that there is no evidence that the refusal was witnessed or that the witness was physically present.

If the plaintiff had raised this claim before the hearing officer, the hearing officer could have continued the hearing to subpoena the officer to explain the discrepancy. See *Prendergast* v. *Commissioner of Motor Vehicles*, Superior Court, judicial district of New Britain, Docket No. CV-15-6029663-S (January 28, 2016) (*Schuman, J.*) (61 Conn. L. Rptr. 733) (rejecting claim that hearing officer abused discretion in continuing hearing to obtain officer's testimony). The plaintiff's failure to raise the claim at the hearing below is a sufficient ground to reject it.

On the merits of the claim, the court is not persuaded that the hearing officer abused her discretion in finding substantial evidence of refusal. It is of course important that police officers complete A-44 forms with sufficient care that the report can be deemed to be reliable. See *Volck* v. *Muzio*, 204 Conn. 507, 518, 529 A.2d 177 (1987) (evident purpose of § 14-227b [c] is to "provide sufficient indicia of reliability so that the report can be

introduced in evidence as an exception to the hearsay rule, especially in license suspension proceedings, without the necessity of producing the arresting officer"). In some cases, errors on an A-44 form may be so substantial and irreconcilable as to render the report unreliable, and thus inadmissible, if a proper objection is made at the hearing. See *Do* v. *Commissioner of Motor Vehicles*, 164 Conn. App. 616, 627, 138 A.3d 359, cert. granted, 322 Conn. 901, 138 Conn. 931 (2016). In this case, however, internal evidence in the A-44 form and attached reports indicate that all relevant events, including the refusal, occurred in the early morning hours of May 14, 2016, but that Armstrong, the arresting officer, did not complete the police report until May 19, 2016. The attached report is, by regulation, incorporated into the A-44 form if, as is the case here, it is sworn to by the arresting officer. See Regs., Conn. State Agencies § 14-227b-10 (b) ("Additional statements or materials necessary to explain any item of information in the report may be attached to the report. Such attachment[s] shall be considered a part of the report having the approval of the commissioner, as provided in subsection [c] of section 14-227b of the Connecticut General Statutes, if sworn to under penalty of false statement.").

In this case, both the A-44 and the attached reports all consistently report the events of the investigation, arrest, breath test, and refusal as occurring as one continuous sequence of events on the same day, May 14, from the initial report of the accident at around 4:44 a.m. to the testing between 5:50 a.m. and 7:07 a.m. Except for the blank next to the word "refusal," which states the date as 5/19/2016, all the dates in the A–44, on the breath test strip attached to the A-44, and the police report refer to the events as occurring on May 14, 2016. The report itself, however, was completed on May 19, 2016, and Armstrong's oath, both on the A-44 and on the narrative police report, was taken on May 19, 2016, by a Sergeant Marley. Section J of the A-44 form, captioned "Chemical Alcohol Test Refusal," was signed by Ryan Rathgaber, badge number 13. Although the plaintiff argues that there is no evidence that Rathgaber was present on the morning of May 14, Rathgaber endorsed the form under the statement: "The operator named above refused to submit to such test or analysis when requested to do so. The refusal occurred in my presence and my endorsement appears below." As required by § 14-227b (c), Armstrong, as the arresting officer, subsequently subscribed and swore to the report of the chemical alcohol test or refusal under penalty of false statement.

A reasonable inference, from the evidence as a whole, is that the plaintiff refused the urine test on May 14, the morning of his arrest, rather than May 19 as stated on the form. On May 14, the date of the arrest, Armstrong was working the midnight to 8 a.m. shift. ROR,

narrative report, p. 1. The narrative portion of his report attests that the breath test was administered at 5:50 a.m. and that he then requested a urine sample. At that point, the plaintiff indicated that he wanted to speak to an attorney and made several attempts to reach one. When he could not reach one, he spoke with a family member and then "elected to refuse a urine sample." The narrative, though not explicit as to the time of refusal, makes it clear that it occurred on the same day as the arrest and breath test. After the breath test, moreover, the plaintiff indicated that he was having chest pains and difficulty breathing, at which point an ambulance was called. The plaintiff refused to go to the hospital and was subsequently released on a $600 nonsurety bond. It is reasonable to infer that by the time the plaintiff was evaluated by ambulance personnel and the processing of his arrest and bond was completed, Armstrong's shift was nearly over and he was unable to complete the arrest report until a few days later, May 19. Based on the consistent references to May 14 as the date of the events in question and the narrative documenting an uninterrupted sequence of events, it is further reasonable to infer that the single reference to "5/19/16" on the A-44 line documenting the refusal is a simple error that occurred when Armstrong completed the form on May 19.

The totality of the evidence, including the narrative report, provides reliable, probative and substantial evidence that the plaintiff refused to submit to a urine test after passing a breath test. The plaintiff has not borne his burden of proving that the hearing officer acted unreasonably, arbitrarily, illegally or in abuse of her discretion in finding sufficient evidence of refusal.

C

The plaintiff's final argument is that there was no reasonable cause to change the testing method. This claim was not raised below, is not preserved for review, and if reviewed, lacks merit.

Section 14-227b (k) states: "The provisions of this section shall apply with the same effect to the refusal by any person to submit to an additional chemical test as provided in subdivision (5) of subsection (b) of section 14-227a." Section 14-227a (b) (5) provides in relevant part that evidence of the amount of alcohol or drug in a defendant's blood or urine, as shown by a chemical analysis, is admissible if "an additional chemical test of the same type was performed at least ten minutes after the initial test was performed or, if requested by the police officer for reasonable cause, an additional chemical test of a different type was performed to detect the presence of a drug or drugs other than or in addition to alcohol . . . ." The plaintiff cites *Saba* v. *Commissioner of Motor Vehicles*, Superior Court, judicial district of Tolland, Docket No. CV-97-64786-S (March 17, 1998) (*Klaczak, J.*) (21 Conn. L.

Rptr. 433), and *Georgino* v. *Commissioner of Motor Vehicles*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-97-0570325 (June 24, 1997) (*Maloney, J.*), as instructive on the issue of reasonable cause. The court agrees that *Saba* and *Georgino* are instructive, but they do not help the plaintiff's case.

In *Saba*, the evidence supporting a request for a urine test after the plaintiff passed a breath test was that "the plaintiff was not operating his vehicle while in full control of his faculties. He was operating without headlights at 2 a.m. and entered a parking area through a marked exit lane. He did not satisfactorily perform field sobriety tests. There was marijuana residue in the vehicle and he admitted being in the company earlier of people who were smoking marijuana. The police officer was not required to accept his statement that the plaintiff had not smoked any himself." *Saba* v. *Commissioner of Motor Vehicles*, supra, 21 Conn. L. Rptr. 434. Based on that evidence, the court found that the request for the urine test was reasonable.

In *Georgino*, the evidence supporting a request for a urine test after the plaintiff passed a breath test was that "the plaintiff was virtually out of control at the time he was arrested. He had just driven his vehicle into a stationary object. He had urinated on himself. He was unable to deal with the task of handing over his license and registration papers . . . much less perform the coordination tests administered by the police officer." *Georgino* v. *Commissioner of Motor Vehicles*, supra, Superior Court, Docket No. CV-97-0570325. Based on that evidence, the court concluded that "[w]hen the breath test, which measures only alcohol in the blood, showed a level below intoxication, the police officer had a reasonable basis for requiring a different type of test, one that might detect the presence of some other drug to account for the plaintiff's extreme symptoms." Id.

The plaintiff here claims that such reasonable cause was absent in his case. To the contrary, many of the same facts were present. He had just crashed his car into a stationary object, resulting in substantial front end damage to his car. He left the scene of the accident even though substantial property damage had occurred. He insisted that he had hit a traffic cone even though a traffic cone could not have caused such damage to his car. His eyes were drowsy, droopy-lidded and red-rimmed. His pupils were constricted, which, to the officer, suggested use of narcotics. His movements were very slow. He failed all three field sobriety tests. In attempting the walk and turn and one-leg stand tests, he could not maintain his balance or follow directions, and he was very uneasy on his feet, with his legs shaking.

The plaintiff claims that the officer had no reason to

request a breath test in the first place if he suspected only narcotic use. The plaintiff, however, "immediately volunteered to take a Breathalyzer test" before his arrest. ROR, narrative, p. 2. After his arrest, at the police station, the plaintiff initially declined the officer's offer to contact an attorney and "almost enthusiastically elected to submit to a breath test." The fact that the plaintiff did not smell of alcohol does not mean that it was unreasonable, in the first instance, to start with the breath test. The officer's decision to request a urine test, when the breath test did not indicate any alcohol in the plaintiff's system, was entirely reasonable based on the plaintiff's failure to control his vehicle, his flight from the scene of his accident, his failure of the field sobriety tests, and his apparent inability to understand or explain how he had damaged his car so substantially.

## CONCLUSION

The court has carefully considered each of the plaintiff's arguments in light of the evidence in the entire record. The hearing officer's decision is supported by substantial reliable and probative evidence. The appeal is dismissed.

* Affirmed. *Adams* v. *Commissioner of Motor Vehicles*, 182 Conn. App. 165,     A.3d     (2018).

[1] The record originally filed with the court omitted three pages of the hearing transcript. All references to the record (ROR) in this decision are to the supplemental return of record (# 114), which contains the complete record.

[2] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] General Statutes § 4-183 (j) provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law: (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings."