******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# KIRSHAN NANDABALAN *v.* COMMISSIONER
## OF MOTOR VEHICLES
### (AC 43691)

Bright, C. J., and Cradle and Suarez, Js.

*Syllabus*

The plaintiff, who had been charged with the crime of operating a motor vehicle while under the influence of intoxicating liquor, appealed to the trial court from the decision of the defendant Commissioner of Motor Vehicles suspending his motor vehicle operator's license for forty-five days and requiring the use of an ignition interlock device in his motor vehicle for one year, pursuant to statute (§ 14-227b), for his refusal to submit to a breath test to determine his blood alcohol content. The trial court rendered judgment dismissing the plaintiff's appeal, from which the plaintiff appealed to this court. *Held* that the judgment of the trial court dismissing the plaintiff's appeal was affirmed; the trial court did not err in concluding that the administrative record contained substantial evidence to support the hearing officer's finding that the plaintiff knowingly refused to submit to the breath test; the totality of the evidence, including a police report, a Form A-44, a breath test strip that read "test aborted refusal," and the testimony of the arresting officer and the plaintiff at the hearing, provided reliable, probative, and substantial evidence that the plaintiff refused to submit to a breath test; moreover, although the officer did not provide a narrative to describe the plaintiff's words or actions that constituted a refusal, as required by Form A-44, the officer's testimony at the hearing about the plaintiff's express verbal refusal cured any defects in the Form A-44.

Argued January 11—officially released May 4, 2021

*Procedural History*

Appeal from the decision of the defendant suspending the plaintiff's motor vehicle operator's license, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Cordani, J.*; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Devin W. Janosov*, with whom was *Donald A. Papcsy*, for the appellant (plaintiff).

*Christine Jean-Louis*, assistant attorney general, with whom were *Eileen Meskill*, assistant attorney general and, on the brief, *William Tong*, attorney general, for the appellee (defendant).

*Opinion*

SUAREZ, J. The plaintiff, Kirshan Nandabalan, appeals from the judgment of the trial court dismissing his appeal from the decision of the defendant, the Commissioner of Motor Vehicles, ordering a forty-five day suspension of his license to operate a motor vehicle and requiring him to employ an ignition interlock device, pursuant to General Statutes § 14-227b, for his refusal to submit to a chemical alcohol test. The plaintiff claims that the court erred in concluding that the administrative record contained substantial evidence to support the hearing officer's finding that he knowingly refused to submit to the chemical alcohol test.[1] We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. We begin by restating the trial court's recitation of the facts surrounding the suspension of the plaintiff's license. "On May 7, 2019, Officer [Dimitar] Sadiev of the Guilford Police Department was dispatched in response to a 911 call indicating that a red Porsche with a specified license plate was operating erratically.[2] Officer Sadiev located the Porsche, noticed that it was driving about [fifteen miles per hour] in a [thirty mile per hour] zone and pulled it over. As he approached the operator, later identified as the plaintiff, the officer detected the odor of alcohol. Upon questioning, the plaintiff informed Officer Sadiev that he was coming from KC's Pub and that he had consumed a glass of wine.[3] Officer Sadiev noticed that the plaintiff spoke slowly and slurred his words. Sergeant [Martina] Jakober and Officer Potter then arrived to assist. The plaintiff had some difficulty in reciting portions of the alphabet and counting [backward] and was asked to exit his car.

"Officer Sadiev then administered standard field sobriety tests to the plaintiff. The plaintiff failed some of the standard field sobriety tests and was placed under arrest at approximately 10:20 p.m. The plaintiff was then transported to Guilford police headquarters. At approximately 10:54 p.m., the plaintiff was read his rights and signed a form indicating that he understood them. The plaintiff was read the Implied Consent Advisory and allowed to contact an attorney at 11:13 p.m. The plaintiff made a call. At 11:23 p.m. the plaintiff was read the Test Consent Form but refused to consent to a Breathalyzer test. The plaintiff was again read the Test Consent Form and again refused to consent to the test." (Footnotes in original.)

On May 22, 2019, the defendant sent a notice to the plaintiff to inform him of the suspension of his license pursuant to § 14-227b.[4] On June 7, 2019, pursuant to subsection (g) of § 14-227b, an administrative hearing was held before a hearing officer to determine if the plaintiff's license should be suspended for refusal of a

chemical alcohol test. At the hearing, Officer Sadiev and the plaintiff testified about the plaintiff's arrest and his alleged refusal to take the breath test. A copy of Form A-44[5] with its attachments was admitted into evidence. The plaintiff maintained that he did not refuse to take the breath test. In support thereof, he relied upon Officer Sadiev's failure to document on the A-44 form the exact language he used when he asked the plaintiff to submit to a chemical alcohol test, along with Officer Sadiev's hearing testimony that he "[did not] remember the specific words that [he] used" to make this request. Officer Sadiev testified at the hearing that, although he could not remember what he asked the plaintiff, the plaintiff "said no to [his] request for a . . . breath sample . . . ."

On June 13, 2019, the hearing officer issued a decision with the following findings of fact and conclusions of law: "(1) The police officer had probable cause to arrest the [plaintiff] for a violation specified in [§] 14-227b . . . . (2) The [plaintiff] was placed under arrest. (3) The [plaintiff] refused to submit to such test or analysis. (4) [The plaintiff] was operating the motor vehicle. (5) [The plaintiff] was not under [twenty-one] years of age." The hearing officer also made the following subordinate finding: "Based upon sworn, credible testimony of . . . Officer Sadiev and testimony of [the plaintiff], it is found that there was a refusal to participate in testing." On the basis of these facts, the hearing officer ordered that the plaintiff's license be suspended for forty-five days and that an ignition interlock device be installed and maintained in the plaintiff's vehicle for one year.

On August 6, 2019, the plaintiff appealed from the hearing officer's decision to the Superior Court pursuant to General Statutes § 4-183.[6] In the complaint, the plaintiff alleged, among other things, that the decision was "clearly erroneous in light of the reliable, probative, and substantial evidence produced at the hearing" and that "the hearing officer abused his discretion in finding that . . . the state submitted 'substantial evidence' of [the plaintiff's] refusal to take a [chemical alcohol] test . . . ." This decision, the plaintiff alleged, was "arbitrary and capricious," "[constituted] an abuse of discretion," and "was clearly an unwarranted exercise of discretion." Both parties submitted briefs and a hearing was held before the trial court on December 2, 2019.

On December 3, 2019, the court rendered judgment dismissing the appeal and issued a memorandum of decision. After setting forth its findings, the court concluded that "the record contain[ed] substantial evidence to support the hearing officer's finding that the plaintiff knowingly refused the test," and that "the hearing officer's decision was not clearly erroneous, arbitrary and capricious, or an abuse of discretion in view of the reliable, probative and substantial evidence on the whole record." The court pointed to three pieces

of evidence in the record that supported the hearing officer's finding: "(1) the A-44 report and its attachments; (2) Officer Sadiev's hearing testimony; and (3) the plaintiff's hearing testimony." The court stated that, "given the reports, the testimony of Officer Sadiev and the testimony of the plaintiff himself, it is clear that (1) the plaintiff was requested by the officers to take the test; (2) the plaintiff understood that the officers were requesting that he take the test; and (3) that the plaintiff refused."[7]

Lastly, the court determined that "the plaintiff . . . failed to establish on appeal that the [defendant's] decision was (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) *clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record*; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." (Emphasis added.) This appeal followed. Additional facts and procedural history will be set forth as necessary.

On appeal, the plaintiff claims that the court erred in concluding that the administrative record contained substantial evidence to support the hearing officer's finding that he knowingly refused to submit to the chemical alcohol test. We disagree.

We begin by setting forth the standard of review. "The determination of whether the plaintiff's actions constituted a refusal to submit to a Breathalyzer test is a question of fact for the hearing officer to resolve. . . .

"In an administrative appeal, the plaintiff bears the burden of proving that the commissioner's decision to suspend a motor vehicle operating privilege was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. . . . Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The evidence must be substantial enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . [I]f the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld. . . . The obvious corollary to the substantial evidence rule is that a court may not affirm a decision if the evidence in the record does not support it." (Citation omitted; internal quotation marks omitted.) *Fernschild*

v. *Commissioner of Motor Vehicles*, 177 Conn. App. 472, 476–77, 172 A.3d 864 (2017), cert. denied, 327 Conn. 997, 175 A.3d 564 (2018).

"Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Ives* v. *Commissioner of Motor Vehicles*, 192 Conn. App. 587, 595, 218 A.3d 72 (2019).

"[D]ifficulties [are] inherent in ascertaining when a person is 'refusing' to submit to the breath test. 'Refusal' is difficult to measure objectively because it is broadly defined as occurring whenever a person 'remains silent or does not otherwise communicate his assent after being requested to take a blood, breath or urine test under circumstances where a response may reasonably be expected.' Regs., Conn. State Agencies § 14-227b-5. . . . Refusal to submit to a blood alcohol test may be established by one's actions or by verbally expressing one's unwillingness." (Citation omitted; internal quotation marks omitted.) *Fernschild* v. *Commissioner of Motor Vehicles*, supra, 177 Conn. App. 477.

In the present case, the hearing officer considered the following evidence relevant to the issue of refusal. First, a police report prepared by Officer Sadiev states: "[The plaintiff] refused to the two breath tests[8] which were requested at 2323 hours. Sergeant Jakober . . . asked if he would consent to the breath tests to which [he] declined once again." (Footnote added.) Second, section F[9] of the A-44 form completed by Officer Sadiev on May 8, 2019, indicates that Officer Sadiev twice asked to administer a breath test to the plaintiff, and that the plaintiff refused both requests. Section H[10] of the form indicates that the plaintiff's refusal was verbal. In this section, Officer Sadiev gave the following narrative description of the plaintiff's refusal: "The operator named above refused to submit to such test or analysis when requested to do so. The refusal occurred in my presence and my endorsement appears below." Sargent Jakober also signed the A-44 form as a witness to the refusal.[11] Third, a Breathalyzer test strip was imprinted with the phrase "test aborted refusal." Fourth, Officer Sadiev and the plaintiff testified under oath at the hearing and were cross-examined. Officer Sadiev testified that the plaintiff "said no to [his] request for a Breathalyzer, breath sample . . . ." Officer Sadiev then testified, however, that he "[did not] remember the specific words that [he] used" to ask the plaintiff to take the test. The plaintiff testified that he did not recall what he said when Officer Sadiev asked him to take the breath test. When asked whether, at any point, he communicated to Officer Sadiev that he would take the

breath test, he responded: "I don't [think] so." The plaintiff's counsel interjected on multiple occasions during this colloquy.[12]

The plaintiff argues that this evidence was not sufficient to support the hearing officer's conclusion that he expressly refused to take the breath test. Specifically, he asserts that Officer Sadiev's narrative description in section H of the A-44 form contains only a conclusory statement that the plaintiff expressly refused the test, but does not contain facts to support this conclusion. He further argues that Officer Sadiev's testimony before the hearing officer "did not go far enough to correct the volume of errors" with the narrative description.

The plaintiff principally relies on *Fernschild* v. *Commissioner of Motor Vehicles*, supra, 177 Conn. App. 472, arguing that the present case is factually similar, and, thus, we should reverse the judgment for lack of evidence of refusal. In *Fernschild*, a police officer completed an A-44 form, on which the box "test refusal" was checked. Id., 478. A witnessing officer attested to a printed statement on the form stating: "[T]he operator named above refused to submit to [a breath] test . . . when requested to do so . . . . [T]he refusal occurred in my presence and my endorsement appears below . . . ." Id. The hearing officer found that the A-44 form, a Breathalyzer test strip with the words "test aborted refusal," and a case incident report in which the police officer stated that the plaintiff "refused to submit to the breath test," supported a finding of refusal. Id.

On appeal to this court, the plaintiff in *Fernschild* argued that "the record contained only mere conclusions of refusal without any underlying facts as to the plaintiff's verbal expressions or conduct supporting the conclusion of the hearing officer that the plaintiff had refused to submit to the Breathalyzer test." Id., 477–78. This court agreed, stating: "The evidence before the hearing officer . . . was . . . bereft of underlying factual information. It included only conclusions by [the police officers] that the plaintiff refused the breath test. The record contains no description, however brief, of the behavior, conduct or words of the plaintiff that led the officers to conclude that there had been a refusal, either expressly or by conduct. Without any underlying evidentiary basis to support the inference of a refusal, we are constrained to conclude that there was not substantial evidence in the record to support the determination of the hearing officer that there had been a refusal." (Footnote omitted.) Id., 479.

In the present case, the plaintiff raised a similar argument before the trial court. The court rejected it, stating: "Given the actual hearing testimony of Officer Sadiev and the plaintiff himself, this matter is clearly distinguished from the plaintiff's interpretations of *Fernschild* v. *Commissioner of Motor Vehicles*, [supra, 177 Conn. App. 472] . . . . The refusal of the plaintiff

here was confirmed as factually found by the hearing officer, by the live hearing testimony of the arresting officer and the plaintiff himself. As noted, the finding of a refusal is a finding of fact."[13] (Citation omitted.)

The defendant argues that the present case is distinguishable from *Fernschild* for reasons similar to those articulated by the trial court. In addition, the defendant points to *Adams* v. *Commissioner of Motor Vehicles*, Superior Court, judicial district of New Britain, Docket No. CV-16-6033742-S (March 7, 2017) (reprinted at 182 Conn. App. 169, 189 A.3d 633), aff'd, 182 Conn. App. 165, 189 A.3d 629, cert. denied, 330 Conn. 940, 195 A.3d 1134 (2018), which, the defendant contends, is factually similar to the present case because it involves an express refusal. The defendant further contends that *Adams* is distinguishable from *Fernschild* "because *Fernschild* concerned a refusal that left open for interpretation whether it occurred by behavior, conduct or words."

In *Adams*, the plaintiff, who was arrested for operating a vehicle under the influence of drugs or alcohol, claimed that there was insufficient evidence to support a finding that he refused to submit to a urine test. *Adams* v. *Commissioner of Motor Vehicles*, supra, Superior Court, Docket No. CV-16-6033742-S. In *Adams*, a police report indicated that after a police officer requested a urine sample from the plaintiff, "the plaintiff attempted unsuccessfully to reach an attorney and then 'spoke with a family member and elected to refuse a urine sample.' " Id. The trial court concluded that this evidence was sufficient to support a finding of express refusal. In reaching this conclusion, the trial court in *Adams* distinguished the case from *Bialowas* v. *Commissioner of Motor Vehicles*, 44 Conn. App. 702, 692 A.2d 834 (1997), which "stands for the proposition that when a person refuses a test by conduct . . . the police must document the conduct that constitutes the refusal." *Adams* v. *Commissioner of Motor Vehicles*, supra, Superior Court, Docket No. CV-16-6033742-S. The trial court held that where there is an express refusal, as opposed to a refusal by conduct, "no further description of the refusal is required." Id. This court adopted the opinion of the trial court. *Adams* v. *Commissioner of Motor Vehicles*, 182 Conn. App. 165, 168, 189 A.3d 629, cert. denied, 330 Conn. 940, 195 A.3d 1134 (2018).[14]

We agree with the trial court and the defendant that the present case is distinguishable from *Fernschild* and more like *Adams*. As the plaintiff notes, after *Fernschild*, the Department of Motor Vehicles revised section H of the A-44 form to include the following instructions: "Use narrative to describe the operator's words or actions that constituted a refusal." Officer Sadiev did not do so. Unlike in *Fernschild*, however, the hearing officer was presented with testimony about the plaintiff's express verbal refusal that cured any

defects in the A-44 form, namely, the testimony from Officer Sadiev indicating that the plaintiff said "no" when he was asked to take a breath test.

The court stated in its memorandum of decision that the plaintiff's "initial testimony, along with his counsel's objections, concerning whether he refused to take the test can be characterized as evasive." Our review of the hearing transcripts leads us to the same conclusion. At the administrative hearing, the plaintiff testified that he "[did not] recall" what he said to Officer Sadiev. He further testified that he did not think he communicated to Officer Sadiev that he would not take the breath test. The plaintiff's responses to the defendant's counsel's questions were not definitive. His testimony indicated that he was uncertain about the events surrounding his alleged refusal. Officer Sadiev testified that, even though he could not remember the exact question he asked the plaintiff, the plaintiff expressly refused to submit to a chemical alcohol test. It was within the hearing officer's province as the finder of fact to find Officer Sadiev's testimony credible.

Furthermore, Officer Sadiev's indication on the A-44 form that the plaintiff's refusal was verbal, along with his testimony that the plaintiff responded "no" when asked to take a breath test, support the finding that the plaintiff's refusal was an express verbal one, rather than one expressed through ambiguous conduct. In *Adams*, the trial court relied solely on the description in the police report in concluding that there was sufficient evidence to find that the plaintiff expressly refused to take a urine test. *Adams* v. *Commissioner of Motor Vehicles*, supra, Superior Court, Docket No. CV-16-6033742-S. This description did not contain the words that the police officer used to request the test, nor did it contain the words that the plaintiff used to respond. Id. Thus, in comparison to the hearing officer in *Adams*, the hearing officer in the present case had even more evidence about the plaintiff's express refusal upon which to rely. This evidence supported its ultimate decision.

The totality of the evidence, including the police report, the A-44 form, the Breathalyzer test strip, and the testimony of Officer Sadiev and the plaintiff, provides reliable, probative, and substantial evidence that the plaintiff refused to submit to a breath test. The plaintiff has not met his burden of proving that the hearing officer erred in concluding that there existed sufficient evidence of refusal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In his principal brief to this court, the plaintiff raises three issues, all of which are related to his alleged refusal. These issues are the same in substance, and we have reframed them as the single issue set forth herein.

[2] "The 911 caller reported that the red Porsche was traveling on the wrong side of the road and nearly collided with the caller's car head-on. The caller further reported that she observed the Porsche repeatedly crossing the

double yellow line and driving on the grassy shoulder of the road. Lastly, the caller noted that the Porsche was driving unusually slowly."

[3] "Later during processing, the plaintiff indicated that he had a glass of scotch."

[4] General Statutes § 14-227b provides in relevant part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine and, if such person is a minor, such person's parent or parents or guardian shall also be deemed to have given their consent.

"(b) If any such person, having been placed under arrest for a violation of section 14-227a or 14-227m or subdivision (1) or (2) of subsection (a) of section 14-227n, and thereafter, after being apprised of such person's constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that such person's license or nonresident operating privilege may be suspended in accordance with the provisions of this section if such person refuses to submit to such test . . . and that evidence of any such refusal shall be admissible in accordance with subsection (e) of section 14-227a and may be used against such person in any criminal prosecution, refuses to submit to the designated test, the test shall not be given . . . . The police officer shall make a notation upon the records of the police department that such officer informed the person that such person's license or nonresident operating privilege may be suspended if such person refused to submit to such test . . . .

"(c) If the person arrested refuses to submit to such test or analysis . . . the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license . . . . The police officer shall prepare a report of the incident and shall mail or otherwise transmit in accordance with this subsection the report and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles within three business days. . . . If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for a violation of section 14-227a or 14-227m or subdivision (1) or (2) of subsection (a) of section 14-227n and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so . . . ."

[5] This form is entitled: "Officer's OUI Arrest and Alcohol Test Refusal or Failure Report." "The A-44 form is used by the police to report an arrest related to operating a motor vehicle under the influence and the results of any sobriety tests administered or the refusal to submit to such tests." *Roy* v. *Commissioner of Motor Vehicles*, 67 Conn. App. 394, 396 n.3, 786 A.2d 1279 (2001).

[6] General Statutes § 4-183 (j) provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) *clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record*; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings." (Emphasis added.) We interpret the plaintiff's claim to implicate subdivision (5) of this subsection.

[7] The trial court noted: "The plaintiff's own testimony establishes that he understood the officers wanted him to take the test and that he never communicated his consent to take the test."

[8] In light of Officer Sadiev's testimony, it is reasonable to interpret this portion of his report to state that the plaintiff was asked and refused to submit to a breath test twice.

[9] Section F is entitled "Chemical Alcohol Test Data." In this section, there are boxes for an officer to indicate the type of test selected, the dates and times that the first and second tests were offered, and the result of each test. In the present case, Officer Saidev wrote "refused" for the result of

each test.

[10] Section H is entitled "Chemical Alcohol Test Refusal" and must be completed when an operator refuses testing. An officer must indicate whether the test refusal was verbal or through conduct and "[u]se [a] narrative to describe the operator's words or actions that constituted a refusal." A second officer must provide his or her name and signature indicating that he or she witnessed the refusal.

[11] At the administrative hearing, the plaintiff's counsel asked Officer Sadiev: "And the refusal wasn't witnessed by a Sergeant Jakober; is that correct?" Officer Sadiev responded: "Yes, sir." Shortly after, the plaintiff's counsel asked: "[Y]our testimony . . . is that you in some way requested that [the plaintiff] do a test, the Breathalyzer or otherwise, and he said no; is that correct?" Officer Sadiev responded: "And someone asked him if he would do it. He said, no. And Sergeant Jakober also asked him." Additionally, the police report stated "Sergeant Jakober . . . asked if [the plaintiff] would consent to the breath tests to which [he] declined once again. The refusal was witnessed by Sergeant Jakober."

On the basis of this evidence, it is reasonable to interpret the evidence such that Sergeant Jakober signed the A-44 form as a witness to the refusal because she asked the plaintiff to take the breath test for a third time and, thus, witnessed this refusal.

[12] At one point during the administrative hearing, the defendant's counsel asked the plaintiff: "So isn't it true that when asked to take a breath test you said, no?" The plaintiff's counsel objected to this question and interjected when the defendant's counsel attempted to repeat the question. The plaintiff then answered: "I don't recall probably what I said. But I do recall, I do remember . . . ." Before the plaintiff could finish this response, his counsel interrupted, stating: "You don't have to answer more than that. I don't want you to speculate."

[13] The trial court stated: "In this regard, the hearing officer made a specific subsidiary finding, noting: 'Based upon sworn, credible testimony of . . . Officer Sadiev and testimony of [the plaintiff], it is found that there was a refusal to participate in testing.' As the finder of fact, the hearing officer was in the position to assess and weigh the evidence, determine credibility and make findings of fact which are supported by substantial evidence, as this finding was."

[14] We note that the trial court in *Adams* issued its decision before this court issued its decision in *Fernschild*. Because this court adopted the trial court's decision in *Adams* as its own, it did not address *Fernschild*. This court's decision in *Fernschild*, however, was issued approximately three months before *Adams* was argued before this court, and approximately seven months before this court issued its decision in *Adams*. On the basis of the timeline of these decisions, we conclude that the court in *Adams* concluded that the express verbal refusal in that case distinguished it from the factual situations in *Fernschild*.

————————————————